## CHARLES M. MAGNUSON v. STEVENS BROTHERS.[1]

May 28, 1920.

No. 21,667.

**Animal — recovery on contract of hiring — voluntary return — evidence.**
    Plaintiff sued to recover compensation for certain teams hired by defendants. He alleged a contract of hiring at $30 per month for each team, and that defendants wrongfully worked and misused the animals;

[1] Reported in 177 N. W. 929.

that by reason of defendants' wrongful conduct plaintiff demanded a return; that defendants consented, and returned them; that the teams worked one month, but the compensation had not been paid, nor the return transportation charges. He also claimed damages on the ground that the animals and parts of the harnesses were returned injured through defendants' negligence and misuse. It is *held*:

(1) No issue of a hiring at will was presented either by the pleadings or the evidence, and the court rightly omitted the same from the charge.

(2) The hiring being at a fixed price per month and the teams not being kept for a month, there could not be a recovery, since it does not appear that the hiring was at will and since the jury found that defendants had not violated the contract of hire in any respect.

(3) The evidence does not justify a submission of the issue of voluntary return of the teams so as to allow a recovery for the time they were used by defendants.

Action in the district court for Aitkin county to recover $2,020.37 for one month's hire of six teams of horses and mules, freight on return shipment of horses, and injury to the teams caused by defendants' ill use of them. Defendants interposed a counterclaim for $3,793.61. The case was tried before Stanton, J., and a jury which returned a verdict in favor of defendants. From an order granting plaintiff's motion for a new trial upon the exclusive ground of errors of law at the trial, defendants appealed. Reversed.

*Orr, Stark & Kidder,* for appellants.

*S. H. Eckman,* for respondent.

HOLT, J.

Plaintiff had six teams at Duluth that had stood idle in the barn for about a month when, on May 20, 1918, he met E. F. Stevens, one of defendants, who was in quest of teams on some road construction his firm was doing in Aitkin county. Negotiations resulted in plaintiff loading his teams the next day on a railway car for shipment to defendants, who received the animals and set them to work. At the time of loading E. F. Stevens handed plaintiff a writing which he had prepared and signed for the firm, addressed to plaintiff saying: "We will

hire six teams of horses and mules with harness from you for use near Mississippi, Minn. for two or three months' work and will pay $30.00 per mo. per team rental with expense both ways. We agree to return them in as good condition as when received excepting reasonable use, and wear and will pay you $200 for each animal killed or crippled by our negligence." In the last days of May plaintiff, from information received, concluded that the teams were not worked as agreed upon and were misused, and because thereof he demanded their return. Defendants demurred, but, after being threatened by plaintiff's attorney with suit, the teams were shipped to Duluth on the nineteenth of June. Defendants did not pay the return transportation charges, nor for any part of the time the teams were used. Plaintiff then brought this action. Defendants had a verdict, but on plaintiff's motion a new trial was ordered solely because of errors of law. Defendants appeal.

The complaint based a recovery upon a violation of a condition, as to the work and use of the teams, alleged to have been contained in the hiring contract, whereby the animals became poor, galled, lame and unfit for use, and were returned in that condition when plaintiff demanded their return because of said violation. A month's hire was asked, and the return transportation charges, together with damages for injuries to the animals and expenses connected with their cure, and some minor losses on account of missing parts of the harness and the unshod condition of the teams. Defendants counterclaimed, on the theory that plaintiff, by demanding a return of the teams before the period of hiring expired, breached the contract. Plaintiff's reply was to the effect that the return was requested because the animals were abused and improperly worked and cared for, and also that when plaintiff made the demand defendants returned them voluntarily. In short, there is no intimation in the pleadings that the hiring was at will, so that either party could arbitrarily and without cause terminate the same by simply signifying to the other a desire so to do.

The contention of defendants that the writing above set out constituted the contract of hiring was not adopted by the trial court, for plaintiff was permitted to testify that he did not assent to its terms and to give his version of an oral agreement which was to be expressed in a

written contract to be drawn thereafter by a lawyer. He was also permitted to testify that it was expressly agreed that the teams were not to be used on wheel scrapers, and that they should not be overworked or misused, otherwise he did not dispute the terms stated in the writing. Defendants, of course, maintained that there was no restriction as to the kind of hauling to which the teams might be put, and that the whole agreement was embodied in the writing above set out. Besides the dispute as to the terms of the contract in this respect, the controversy at the trial related chiefly as to whether the animals were overworked or maltreated by defendants, and to their condition when returned as compared with their condition when received. No particular issue was raised by the testimony in respect to the duration of the hiring. In fact, plaintiff when asked to state whether or not he told E. F. Stevens as to what time he would let them have the teams, answered: "I don't remember. He hired him (them) for his work." There is no suggestion that the work defendants had in hand could have been completed short of two months from the date the teams were sent to them.

The point of the appeal is that the evidence made it a question of fact for the jury whether the hiring was at will, so that plaintiff could elect to terminate the arrangement without any cause whatever, and recover the stipulated compensation for the time defendants were allowed to use the teams and also the transportation back to Duluth. As above indicated, neither by the pleadings nor by anything occurring during the trial was such an issue tendered. The exception taken to the charge at the trial cannot be said to suggest it, except perhaps inferentially. It was sought to be raised in the motion for a new trial upon an exception to this portion of the charge: "If, however, the contract did not confine the defendants to their use only upon the slip scrapers and that they had a right under the agreement made to use them generally in their road work, and the defendants did so use them in a proper way and not negligently, then the act of the plaintiff in demanding their return was a repudiation of the contract and he would not be entitled to recover in this action for their use while they were used by the defendants." This sentence should be considered in connection with the one immediately preceding which was: "If you find

that the contract was as represented by the plaintiff, that the horses were only to be used on these slip scrapers and were not to be used on wheel scrapers, and that they were used by the defendants on wheel scrapers, or some of them were so used, and I think it is admitted that they were so used by the defendants, or they were badly or negligently used, it would be a violation of the terms of the contract and the plaintiff would have a right, a legal right, to demand their return because of a violation of the terms of the contract." In short, the jury were to award compensation for the time the teams were kept by defendants if they had been used contrary to the provisions of the contract or had been improperly used.

Under the pleadings and the evidence this was the only ground upon which to predicate a recovery. The evidence furnishes no basis for a finding that the hiring was at will, or for an indefinite period, at the rate of $30 per month for each team. It is not reasonable to infer that the parties would have entered the arrangement if it were open to either one to terminate it any day after the teams began the work. Plaintiff certainly would not have taken the railroad transportation risks, if defendants were not bound to use the teams so that substantial earnings could be expected, and neither would defendants have incurred the transportation charges both ways and other trouble incident to shipment if plaintiff was to have the privilege of demanding a return of the teams after a few days' work. No doubt both parties understood that the hiring was for the job in hand, which was supposed to last not less than two months. We are of opinion that all issues properly in the case upon any view of the evidence were submitted, and that the one now sought to be injected cannot be made out upon this record. Had there been a hiring at will we should have expected the parties to have fixed a per diem price, as was the case in Learned-Letcher Lumber Co. v. Fowler, 109 Ala. 169, 19 South. 396.

Unless it expressly appeared that the hiring was at will, this agreement was in such form in respect to the hire that it would seem no recovery could be had unless the teams remained a month. There is no dispute that the price agreed on was $30 per month. The teams were not allowed to remain the full month. The case of Peterson v. Mayer,

46 Minn. 468, 49 N. W. 245, 13 L.R.A. 72, is so clearly in point against a right of recovery by plaintiff that we refrain from referring to any other authority except Johnson v. Fehsefeldt, 106 Minn. 202, 118 N. W. 797, 20 L.R.A.(N.S.) 1069.

But plaintiff contends that defendants voluntarily returned the teams and thereby the contract was terminated by mutual consent. The evidence does not justify the claim that defendants voluntarily returned the horses. It was done when threatened by suit. Plaintiff's attorney wrote defendants on June 4 that if they failed to signify their willingness to comply with previous requests for a return he was "instructed to take action which will bring the horses." Defendants on June 11 replied: "As you are doubtless aware we have a contract with Mr. Magnuson for the use of these horses for two or three mo. However, as he does not wish us to work them we have hired other stock and will return his, but only on the express stipulation that he release us from the contract and pay all the expenses which were incurred in shipping up and also returning." Plaintiff's attorney responded: "In the first place, it must be understood, that these horses are to be returned to the owner, one way or another, and you cannot stop it. You should not wish to do so, if you could. If the horses are not here before Monday, steps will be taken that day. In regard to release from your obligations under the contract, I can say that if you have in any manner damaged the horses, Mr. Magnuson will, no doubt, want you to make good. If you have not injured the horses you are well enough protected in returning the horses on the demand of the owner. As to your 'contract,' I am sure you are laboring under a mistaken idea. Mr. Magnuson requested me to make out a contract on the terms agreed upon, but when he discovered that you were abusing his horses he informed me to not make any contract, but instead write you to return the horses."

This sufficiently shows that defendants did not voluntarily terminate the contract so as to permit the jury to find an implied agreement to pay for the use of the teams for the days they were kept by defendants at the stipulated rate. Taking defendants' proposal and the response of plaintiff's attorney, the inference is rather pointed that no claims would be made against defendants unless the teams were injured, and the de-

fendant E. F. Stevens testified that he so understood the attorney's letter. The jury found that the animals were not injured or damaged by misuse or neglect, and that they had not been put to any work not authorized by the hiring.

The learned trial court having approved the verdict upon the issues as submitted in the charge, we are of the opinion that there was nothing prejudicial in the charge and no omission to submit any issue presented by the evidence, and no erroneous ruling during the trial to justify the granting of a new trial.

The order is therefore reversed, and the cause remanded for judgment on the verdict rendered.